MOORE, J.
 

 _]jThis is an insurance coverage dispute. The plaintiff was injured in a log-loading accident when he was struck by a log as his employer’s truck was being loaded with timber. He sued his own employer’s general liability insurer alleging that its Commercial General Liability (“CGL”) policy provided general liability coverage for the subcontractor loading the truck. Both the plaintiff and the defendant insurer filed cross-motions for summary judgment on the issue of coverage. Finding that the policy covered the subcontractor, the trial court granted the plaintiffs motion and denied the defendant’s motion. The court also dismissed claims against the insurance agent for failure to procure insurance pursuant to the agent’s motion for summary judgment. The insurance company filed this appeal. The subcontractor answered the appeal, requesting this court to reinstate the claims against the contractor’s insurance agent in the event this court reverses the summary judgment finding coverage.
 

 For the following reasons, we reverse the judgment of the trial court and render judgment and remand for further proceedings.
 

 Facts and Procedure
 

 Travis Palmer (Palmer) was employed by A.T. Martinez, LLC (“ATM”) as a logging truck driver. ATM contracted with KLM Logging (“KLM”) to cut and load timber on its truck. KLM is a logging operation owned and operated by Kevin Martinez, who is the son of A.T. and Nanette Martinez, the owners of ATM. Palmer was injured while standing near the logging truck as it was being loaded. The accident is alleged to be the fault of KLM.
 

 | «Palmer is entitled to, and indeed collects, worker’s compensation benefits from ATM, which carries workers compensation insurance and commercial general liability insurance with Royal Indemnity Company (“Royal”). However, he and his wife, Den-na Palmer, filed a tort suit against Kevin Martinez and KLM (collectively, “KLM”) for his injuries, naming Royal as KLM’s general liability insurer under the policy issued to ATM as an “uninsured subcontractor.”
 
 [1]
 

 Royal denied coverage on several grounds, but primarily that KLM does not meet the definition of “an insured” or “additional insured” under the express terms of the policy issued to ATM. Briefly stated, the policy lists only A.T. Martinez Timber,
 
 *1150
 
 LLC and AT & N Martínez Land, LLC as named insureds. The policy contained the Louisiana Liability Enhancement endorsement added to the “Who is an Insured” section of the policy, which provides coverage for:
 

 Any person or organization you are
 
 required by a written contract, agreement or permit to name as an insured
 
 but only with respect to liability arising out of: (Emphasis added)
 

 1. “Your work” performed for that insured at the location designated in the contract, agreement or permit; or
 

 2. Premises owned by you.
 

 The provision further states that the insurance only applies if the contract, agreement or permit is executed prior to the injury or damage.
 

 There was no written document executed by ATM and KLM that required ATM to name KLM as an insured for the timber cutting and | .^loading operations which gave rise to this accident, nor for any other subcontracting work KLM did for ATM. However, both ATM and KLM allege that they had a blanket oral agreement that ATM’s liability insurance would insure KLM. The two owners of the respective corporations (parents and child) also claim that KLM paid insurance premiums to Royal specifically targeted for this general liability coverage indirectly through ATM by virtue of ATM withholding part of the payments due to KLM for services performed. ATM also claims that it was led to believe that the CGL policy from Royal covered their uninsured subcontractors even though A.T. Martinez and his wife admitted that they have never read the policy. They claim they relied on their insurance agent, Mac Pace, to provide the coverage they desired, and who also contends that he thought that the policy covered uninsured subcontractors.
 

 Nanette Martinez obtained worker’s compensation and general liability insurance coverage for ATM through Mac Pace, owner/agent of Pace Insurance Managers. Pace had provided ATM’s insurance needs for 25 years. Pace stated by deposition that he obtained the CGL policy issued by Royal through George Pusey of O’Donovan and Associates, who is Royal’s Managing General Agent. Pace claims he requested from Pusey the same coverage for uninsured subcontractors under the Royal policy that he had previously obtained for ATM from the Hartford insurance company. However, Pusey is now deceased. An employee of Pace, Paula Weems, stated by deposition that Pusey told her that the coverage was the same as the Hartford policy. After Royal denied coverage for KLM under the policy ^issued to ATM, Palmer, KLM and Kevin Martinez filed cross-claims against Pace.
 

 Finally, Palmer also brought a claim against ATM for breach of contract as a third party beneficiary. Palmer alleged that as a victim of a tort committed by KLM, he is a third party intended to benefit from an insurance contract, and since insurance was not procured, he has a cause of action against ATM for Royal’s breach of contract.
 

 The trial court granted Palmer’s motion for summary judgment, determining that ATM had an agreement with KLM to provide coverage for the latter as an uninsured subcontractor and that ATM and the Pace agency had intended to obtain coverage for uninsured subcontractors based upon certain responses to questions on the insurance application. Essentially, the court reformed the contract to provide coverage.
 

 The court dismissed Palmer’s claim as a third party beneficiary to the agreement between ATM and KLM that ATM would provide insurance for KLM. The court also
 
 *1151
 
 dismissed KLM’s claim against Pace, inasmuch as it reformed the contract so as to provide coverage under the policy.
 

 Royal filed this appeal. KLM answered the appeal, requesting the court to reinstate its claim against Pace in the event of reversal on the coverage issue.
 

 DISCUSSION
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Ross v. Conoco, Inc.,
 
 02-0299, (La.10/15/02), 828|,So.2d 546. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
 

 Interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment. When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy’s terms. Summary judgment declaring a lack of coverage under an insurance policy may be rendered only if there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.
 
 Jessop v. City of Alexandria,
 
 2003-1500 (La.App. 3 Cir. 3/31/04), 871 So.2d 1140,
 
 writ denied,
 
 883 So.2d 991, 2004-1529 (La.10/1/04). (Interpreting a nearly identical policy provision as in this case.)
 

 An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. The parties’ intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. La. C.C. art. 2047. If the language in an |f,insurance contract is clear and unambiguous, the agreement must be enforced as written and a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. The determination of whether a contract is clear or ambiguous is a question of law.
 
 Jessop, supra.
 

 The dispositive issue in this case requires an interpretation of the provision in the Royal policy regarding “who is an insured” and a determination whether the meaning of this provision is clear or ambiguous. Specifically, the issue is whether the phrase in the policy, “you are required by a written contract, agreement or permit to name as an insured,” requires some form of a writing, or, whether the phrase contemplates an oral “agreement” as well. Thus, in contrast to the trial court, which began its analysis by reviewing extrinsic evidence of the “intent” of the parties, we begin our analysis with an interpretation of the policy language.
 

 The CGL policy issued to ATM by Royal was in effect from December 31, 2002 through December 31, 2003. The named insureds in the policy declarations are A.T. Martinez Timber, L.L.C. and AT & N Martinez Land, L.L.C. The policy also contains the Louisiana Liability Enhancement endorsement which contains the following provision:
 

 
 *1152
 
 12. ADDITIONAL INSUREDS — BY CONTRACT, AGREEMENT OR PERMIT
 

 The following is added to SECTION II-WHO IS AN INSURED:
 

 * * *
 

 [75. a. Any person or organization you are required by a written contract, agreement or permit to name as an insured is an insured but only with respect to liability arising out of:
 
 [2]
 

 1. ‘Your work” performed for that insured at the location designated in the contract, agreement or permit; or
 

 2. Premises owned or used by you.
 

 b. This insurance does not apply unless the contract, agreement or permit is executed prior to the “bodily injury” or “property damage.”
 

 Royal contends in its motion that KLM is not a named or additional insured because, contrary to the coverage requirements in the policy language quoted above, ATM and KLM did not execute a written document, that is, a written contract or a written agreement, that required ATM to name KLM as an insured or provide coverage under the Royal policy. In other words, Royal contends that the adjective “written” in the policy phrase, “you are required by a written contract, agreement or permit,” modifies all three nouns that follow, namely, “contract, agreement or permit.”
 

 The Palmers, Martinezes, ATM, KLM and Pace (hereinafter “appellees”) all contend that the named or additional insured provision in the policy contemplates an oral agreement. Specifically, for reasons discussed herein, they argue that either the policy should be read in such a way that the term “agreement” is not modified by the adjective “written,” or |sthe provision is ambiguous and must be construed in favor of coverage.
 

 For the reasons that follow, we construe this provision of the policy to require a written document — either a contract or an agreement or a permit — that requires ATM to name KLM as an additional insured to ATM’s CGL policy. Although there is no hard and fast grammatical rule that states that an adjective preceding a series of nouns modifies all the nouns in the series, in the context of this provision, the only
 
 reasonable
 
 construction of the phrase “written contract, agreement or permit” is that the contract or agreement or permit must be in writing and such writing “executed prior to the bodily injury or property damage.” Although it is linguistically conceivable to read the provision as the appellees advocate, such a reading is strained and implausible.
 

 The appellees contend that the policy clearly contemplates either a “written contract” or, alternatively, an “agreement” that may be written or oral, or a permit, because all three terms are (technically) separated by the disjunctive “or.” Each term, they argue, must be considered as offering three alternative ways of satisfying the requirements of the provision. These three alternatives, they contend, are (1) written contract, (2) agreement (oral or written), or (3) permit.
 

 We agree that the language in question creates three alternatives; how
 
 *1153
 
 ever, these alternatives all require a writing: (1) written contract, (2) written agreement, or (3) written permit. The term “contract” and “agreement” are not synonymous, although the former requires the latter.
 
 [3]
 
 |3Nor do we agree that applying the adjective “written” to both terms “renders one or the other superfluous,”
 
 [4]
 
 as suggested by one foreign jurisdiction court. On the contrary, it is unreasonable (and superfluous) to hold that either a contract or permit must be evidenced by a writing, but an “agreement” can be oral.
 
 United States Fire Ins. Co. v. Hartford Ins. Co.,
 
 312 Ill.App.3d 153, 244 Ill.Dec. 530, 726 N.E.2d 126, 129-30 (1 Dist. 2000).
 

 The appellees also argue that because the terms “contract” and “agreement” in the phrase, “written contract, agreement or permit” are separated by commas, the term “written contract” is clearly a separate term from “agreement,” and the latter term is not modified by “written.” To support this argument, they distinguish the policy interpreted in
 
 Indemnity Ins. Co. v. Pacific Clay Products Co.,
 
 13 Cal.App.3d 304, 91 Cal.Rptr. 452 (Cal.App. 1970). In
 
 Indemnity,
 
 the word “contract” was defined by the policy as “any written contract or agreement, ...” One of the litigants argued that the phrase “written contract or agreement” is ambiguous; the adjective “written,” it argued, modifies only the word “contract” and does |1nnot modify the word “agreement.” The court rejected this contention as “unreasonable and absurd” because it would make the clause mean “any written contract, or written or oral agreement.”
 
 Indemnity Ins. Co.,
 
 13 Cal.App.3d at 313, 91 Cal.Rptr. 452. The court observed that the adjective “written” modifies both contract and agreement based on the language and punctuation, and it noted that there is no comma following the word “contract,” but there is a comma following the word “agreement” in the clause defining the word “contract” as “any written contract or agreement, ...”
 

 We reject this strained interpretation regarding the use of the comma as unreasonable and absurd. The insertion of a comma (“,”) between the words contract and agreement in the instant case makes no difference in our interpretation. A comma is used simply to correctly punctuate items in a series. Thus, when there is a final conjunction (e.g., “and” or “or”) in the series used before the last term, the
 
 *1154
 
 comma should be read as an “and” or “or.” If there were only two alternatives, i.e. “contract” or “agreement,” as in
 
 Indemnity Ins. Co., supra
 
 and other cases cited by appellees, then the comma is unnecessary and inappropriate. Although it is linguistically possible to read the target provision in such a way that the adjective “written” modifies only “contract,” that does not render such an interpretation reasonable. As noted by the court in
 
 Indemnity:
 
 “A contract should receive such interpretation as will make it reasonable and avoid absurdities.” Nor does it render the clause ambiguous because the alternative interpretation creating the ambiguity must be reasonable. As we stated in note 2,
 
 supra,
 
 simply because it is linguistically possible to read the ^provision in the way the appellees advocate does not render such a reading reasonable.
 

 In
 
 Jessop v. City of Alexandria, supra,
 
 interpreting an almost identical clause of a CGL policy, which read, “whom you are required to add as an additional insured on this policy under
 
 a mitten contract, agreement or permit ...,”
 
 held that the writing requirement was met in that case, where there were sufficient written documents evidencing an oral agreement to list the third-party plaintiffs as additional insureds. In discussing the clause, the court quoted at length the analysis of the identical policy language by the court in
 
 United States Fire Ins. Co. v. Hartford Ins. Co.,
 
 312 Ill.App.3d 153, 244 Ill.Dec. 530, 726 N.E.2d 126 (1 Dist. 2000), which included the following:
 

 When reading the policy phrase within the context of the entire provision, as we must, the only reasonable construction is that there must be a written document-contract, agreement, or permit-which evidences the insured’s intention to provide insurance coverage to another person or organization before the Hartford policy will cover that person or organization as an additional insured.
 

 [Id., 244 Ill.Dec. 530, 726 N.E.2d at 129.
 

 The court further held:
 

 The only reasonable interpretation of the Hartford policy provision is that an “additional insured” will include only those persons or organizations which have received written confirmation-in the form of a contract, agreement, or permit-of the insured’s promise to provide insurance coverage prior to the event for which coverage is being claimed. It would be unreasonable to hold any “contract” or “permit” must be evidence by a writing, but an “agreement” would not.
 

 Id.,
 
 244 Ill.Dec. 530, 726 N.E.2d at 129-30.
 

 Although
 
 United States Fire Ins. Co.
 
 held that coverage was not triggered, the
 
 Jessop
 
 court distinguished the facts of that case, following instead another Illinois case,
 
 West Am. Ins. Co. v. J.R. Constr. Co.,
 
 334 Ill.App.3d 75, 267 Ill.Dec. 807, 777 N.E.2d 610 (1 Dist. 2002). In
 
 West Am. Ins. Co., supra,
 
 the court held that written documents consisting of a certificate of insurance sent by West American’s agent naming J.R. Construction as an additional insured and a letter confirming that J.R. Construction was listed as an additional insured evidenced the insured’s intent to include the party as an additional insured and sufficed to meet the writing requirement.
 
 [5]
 
 The court reaffirmed the holding
 
 *1155
 
 in
 
 United States Fire Ins. Co.,
 
 by acknowledging the rule that when an insuring agreement requires a contract in writing to provide coverage to an additional insured, an oral contract is insufficient. It distinguished the facts of that case, however, on grounds that there was written evidence of an oral agreement and acknowledgment by the parties of the same, as well as several written documents indicating that J.R. Construction was an additional insured.
 

 The
 
 Jessop
 
 court agreed with the result in
 
 West Am. Ins. Co.,
 
 holding that there were sufficient written documents evidencing an agreement that Okashah, the promoter of an event where a patron was injured, lists the Convention and Visitor’s Bureau and City of Alexandria (“third-party | ^plaintiffs”) as additional insureds. The written documents included a written contract of lease signed by Okashah that had a contractual provision that clearly required any decorator hired by the lessee to provide a general liability insurance certificate naming the third party plaintiffs as additional insureds. Because the clause also included obligations of the lessee, the court concluded that the general liability insurance certificate requirement was somewhat ambiguous and could be construed to impose the same requirement on Okashah, the lessee. Other internal written documents (letters and faxes) as well as deposition testimony indicated that, pri- or to the event, employees for third-party plaintiffs and Okashah were communicating with the insurance agency to obtain the certificates of insurance, but somehow the matter fell through the cracks. Based on these written documents, the court concluded that the policy requirements pertaining to an “additional insured” if required by a “written contract” were met under the rationale of
 
 West Am. Ins. Co. v. J.R. Constr. Co., supra,
 
 and, importantly,
 
 Miller v. Superior Shipyard and Fabrication,
 
 2001-2907 (La.App. 1 Cir. 8/20/03), 859 So.2d 159.
 

 In
 
 Miller,
 
 the First Circuit held that when there is a written contract that requires that a party be named as an additional insured, but that party is not specifically added as a named insured on the policy, the policy language automatically includes the party as an additional insured pursuant to the additional insured provisions. In this duty-to-defend case, the plaintiff who was injured in a vehicular-pedestrian accident on Superior’s property also sued T.T.C., Superior’s payroll and benefit processing service, claiming that I hT.T.C. was vicariously liable for Superi- or’s negligence. The only named insured in the Lexington CGL policy was Superior. The “additional insured” provisions of the policy stated that, “if required by written contract, any person, firm or organization is included as an Additional Insured ... with respect to operations performed by the Named Insured.... ” T.T.C. and Superior had a contract requiring Superior to name T.T.C. as an additional insured under the CGL policy issued by Lexington. The insurer, Lexington, argued that the policy did not provide “additional insured” status to T.T.C. because of something Superior, the named insured, had done. However, the court held that the policy provision was triggered by T.T.C.’s potential exposure, thus triggering Lexington’s duty to defend T.T.C. as an additional insured irrespective of the merits of the claim.
 

 
 *1156
 
 We conclude that the clear and unambiguous meaning of the “additional insured” provision in this policy requires that there be a written contract or written agreement or written permit that requires ATM to name KLM as an additional insured under the Royal CGL policy. There was no written document that met this requirement, and we distinguish
 
 Jes-sop, supra,
 
 under the particular facts of this case. ATM and KLM presented deposition testimony that they had a longstanding oral agreement that ATM would procure general liability insurance that covered KLM. There was additional deposition testimony from their insurance agent that they intended to procure general liability insurance that covered uninsured subcontractors, including KLM. There was also deposition testimony that KLM paid for coverage and that coverage was based, in part at least, on |1BKLM’s payroll. Finally, the trial court relied on an insurance application as “written” evidence of ATM’s intent to obtain coverage for uninsured subcontractors. The application evidence, which appears to be related to Owner’s and Contractor’s Protective insurance, not CGL insurance, but was relied on by the trial court for the latter in which the applicant responded “yes” to the question, “Are subcontractors allowed to work w/o cert of ins?” is, at best, marginal evidence that ATM intended to obtain coverage for uninsured subcontractors, not evidence of a written agreement for the same.
 

 In fact, the policy does provide for coverage for additional insureds, but with the proviso that there be a written contract or agreement requiring the named insured (ATM) to name the additional insured (KLM). In this regard, we note that the parties admit that they have never read the policy issued by Royal. In
 
 Isidore Newman School v. J. Everett Eaves, Inc. and Westport Insurance Corp.,
 
 2009-2161 (La.7/6/10), 42 So.3d 352, the Louisiana Supreme Court reaffirmed the well-established principle that “necessary [insurance] coverages are best determined and calculated by the insured, who is charged with the primary responsibility to ‘read the policy.’ ” Citing
 
 City Blueprint & Supply Co., Inc. v. Bob Boggio, et al,
 
 08-1093 (La.App. 4 Cir. 12/17/08), 3 So.3d 62.
 

 Because the policy requirements regarding an additional insured are clear and unambiguous in their requirement that there must be a writing requiring ATM to name an additional insured, and the undisputed facts indicate that this requirement was not met in this case, Royal contends that the trial court erred in establishing coverage under the policy based on the | inparol evidence that ATM intended to obtain
 
 coverage for
 
 KLM, thereby essentially reforming the contract. We agree.
 

 Reformation of an insurance policy is permitted when, because of mutual error or mistake, the policy fails to reflect the intent of the parties.
 
 Earl Williams Construction Company, Inc. v. Thornton & Brooks, Inc.,
 
 501 So.2d 1037 (La.App. 2 Cir.1987). If an insurance agent knows of a policyholder’s true intention as to the coverage desired, the insurance company is bound by the agent’s knowledge, and a policy erroneously issued will be reformed so as to conform to the original intention.
 
 Dunn v. Pons,
 
 03-1486 (La.App. 5 Cir. 4/27/04), 873 So.2d 811. The burden is on the party seeking reformation to prove the error by strong, clear and convincing evidence.
 
 Many v. Hartford Accident & Indemnity Co.,
 
 505 So.2d 929, 931 (La.App. 2 Cir.1987).
 

 The appellees contend that they intended to obtain coverage for uninsured subcontractors including KLM. The evidence of this intent is largely in the form of self-serving deposition testimony that ATM
 
 *1157
 
 and KLM agreed that ATM would obtain CGL coverage for KLM and that ATM instructed their insurance agent/broker, Pace, to obtain such coverage. Summary judgment, however, is inappropriate where the evidence is based on credibility determinations of subjective intent, especially where the credibility determination is based upon self-serving deposition testimony of the claimants. KLM was not listed as a named insured on the policy and there is no evidence that ATM, Pace or Royal intended that additional insured status be recognized absent a written contract between ATM and any uninsured subcontractor.
 

 | 17We conclude that the trial court erred in reforming the Royal policy to establish coverage for KLM where there was no evidence of mutual mistake, nor evidence that ATM and Royal intended that uninsured subcontractors be added as additional insureds absent a written agreement. As previously noted, an insured is obligated to read the policy. ATM received the policy which did not name KLM as an insured or provide coverage for contractors absent a written agreement.
 

 Conclusion
 

 Because we hold that the Royal policy does not provide coverage for KLM and the trial court erred in reforming the insurance contract to provide coverage, we conclude that the trial court erred in granting KLM’s motion for summary judgment and erred in denying Royal’s motion for summary judgment that there was no coverage. Accordingly, we reverse the judgment of the trial court and render judgment granting Royal’s motion for summary judgment.
 

 Because we reverse the summary judgment in favor of KLM, we also reverse the summary judgment in favor of Pace dismissing ATM’s and KLM’s claims against Pace for failure to procure coverage for KLM. These actions are reinstated.
 

 This case is remanded to the trial court for further proceedings in -accordance with the judgment rendered.
 

 REVERSED, JUDGMENT RENDERED, REMANDED.
 

 [1]
 

 . The circumstances under which coverage is claimed in this case is unusual from most cases interpreting similar policies in that the standard industry practice is for the general contractor to be listed as an additional insured under the subcontractor’s policy.
 

 [2]
 

 . There is similar language in a Commercial Catastrophic Liability policy issued by Royal to ATM and in effect from December 31, 2002 through December 31, 2003. The policy's additional insured provision states:
 

 2. Each of the following is also an Insured:
 

 fa) Any person or organization with whom [ATM] agreed, by means of a written contract, agreement or permit to provide such insurance as is afforded by this policy but only with respect to liability arising out of ...
 

 [3]
 

 . One can envision that, under the terms of the policy, the insured could execute a written agreement naming an uninsured subcontractor with whom it had no contractual privity, but who was hired by another subcontractor to perform work on the insured’s premises.
 

 [4]
 

 .
 
 Travelers Indem. Co. of America v. Royal Ins. Co. of America,
 
 22 A.D.3d 252, 802 N.Y.S.2d 125 (N.Y.A.D.1 Dept.2005). ("While Royal's policy with Woodworks nowhere identifies Byrne by name, it does provide additional insurance for "[a]ny person or organization [Woodworks is] required by written contract, agreement or permit to name as an insured” and for whom Woodworks performs work at the location designated in the contract, agreement or permit. Defendants argue that the word “written” modifies not just “contract” but also "agreement” and “permit,” but, in that regard, we find an ambiguity. Defendant's interpretation appears to eliminate any difference in meaning between the words "contract" and "agreement,” seemingly rendering one or the other superfluous, contrary to settled rules of construction, citing
 
 Northville Indus. Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,
 
 89 N.Y.2d 621, 632-633 [657 N.Y.S.2d 564, 679 N.E.2d 1044] (1997))."
 

 But see Federated Dept. Stores, Inc. v. Twin City Fire Ins. Co.,
 
 28 A.D.3d 32, 807 N.Y.S.2d 62 (N.Y.A.D. 1 Dept. 2006): (Criticizing and rejecting
 
 Travelers Indem. Co. of Am. v. Royal Ins. Co. of Am.,
 
 22 A.D.3d 252, 802 N.Y.S.2d 125 [2005], and stating: Even assuming the propriety of the proposition that the additional insured provision in question extends to an oral agreement — a concept that we reject ...)
 

 [5]
 

 . The
 
 Jessop
 
 court mistakenly believed that the letter that confirmed that J.R. Construction was a named insured was sent
 
 prior
 
 to the accident from West American. The certificate of insurance was sent prior to the accident; however, the letter acknowledging that
 
 *1155
 
 J.R. Construction was a named insured was sent after the accident. Additionally, internal memoranda and other documents, and West American’s defense of J.R. Construction before it later claimed that there was no coverage indicate that this case was decided on grounds of equitable estoppel.