LOLLEY, J.
 

 | [H & K Limited of Louisiana, L.L.C. (“H & K”), appeals the grant of summary judgment in favor of Martin Producing, L.L.C. (“Martin” or “Lessee”) and Chesapeake Energy Corporation (“Chesapeake” or “Lessee”), (collectively, the “appellees”) by the First Judicial District Court, Parish of Caddo, State of Louisiana. For the following reasons, we affirm the trial court’s judgment.
 

 Facts
 

 The subject of this litigation is an oil, gas and mineral lease (the “Lease”) on an 86.4-acre tract of land in Caddo Parish, Louisiana. H & K Limited, the appellant, purchased the tract on September 10, 2008, from Eagle Water, Inc.
 

 The chronology of events leading up to this litigation, however, had its genesis on March 14, 2005, when Eagle Water, Inc. entered into the Lease with Martin. In the Lease, Martin was granted the exclusive right to enter onto the land for the exploration and production of oil, gas, sul-phur and any other minerals. Subse
 
 *848
 
 quently, on March 29, 2005, Martin transferred and assigned all of its right, title and interest in the Lease to Chesapeake. The Lease had a primary term of three years, commencing on March 14, 2005.
 

 Following the transfer of the Lease to Chesapeake, the following pertinent events occurred:
 

 • December 6, 2007: The tract subject to the Lease was pooled and integrated into a single drilling and production unit (the “Drilling Unit”) and Chesapeake Operating, Inc. (“Chesapeake Operating”) was named operator of the Drilling Unit;
 

 | ⅞* August 2007: Chesapeake Operating commenced vertical drilling on a well identified as the Chiggero 14-1, which was located on the Drilling Unit. No oil, gas or other minerals were produced by the well at that time;
 

 • February 17, 2008: Chesapeake Operating drilled the horizontal portion of Chiggero 14-1 with continuous operations as reflected by the well activity report;
 

 • May 14, 2008: The primary term of the Lease would have terminated unless it was maintained pursuant to other provisions of the Lease. Drilling of the Chiggero 14-1 horizontal well continued;
 

 • June 12, 2008: The completion process for Chiggero 14-1 began and subsequently ended on June 18; and
 

 • July 19, 2008: The Chiggero 14-1 well began production of natural gas in paying quantities which has continued since.
 

 Upon its purchase of the tract, H & K requested that Chesapeake cancel the Lease, claiming it had terminated under its terms. Chesapeake refused. H & K filed suit against Martin and Chesapeake, with the sole issue being whether the term had been extended according to the Lease. Pertinent clauses of the Lease at issue in this appeal include the following:
 

 2. Subject to the other provisions herein contained, this lease shall be for a period of three (3) years from the date hereof (called “primary term”) and as long thereafter as (1) oil, gas, sulphur or other mineral is produced from said land hereunder or from land pooled therewith, or (2) it is maintained in force in any other manner herein provided.
 

 ⅝ ⅜ ⅜ ⅜ ⅜ ⅜
 

 6. If within ninety (90) days prior to the end of the primary term, Lessee should complete or abandon a well on the lands described above or on land pooled therewith, or if production previously secured should cease from any cause, this lease shall continue in force and effect for ninety (90) days from such completion or abandonment or cessation of production. If at the expiration of the | .^primary term or at the expiration of the ninety (90) day period provided for in the preceding sentence, oil, gas, sulphur or other mineral is not being produced on said land or on land pooled therewith, but Lessee is then engaged in operations for drilling, completion or reworking thereof, or operations to achieve or restore production, or if production previously secured should cease from any cause after the expiration of the primary term, this lease shall remain in force so long thereafter as Lessee either (a) is engaged in operations for drilling, completion or reworking, or operations to achieve or restore production, with no cessation between operations or between such cessation of production and additional operations of more than ninety
 
 *849
 
 (90) consecutive days, or (b) is producing oil, gas, sulphur or other mineral from said land hereunder or from land pooled therewith.
 

 The parties filed cross motions for summary judgment, and after consideration of both, along with an analysis of the Lease, the trial court granted the motion by Martin and Chesapeake, interpreting the Lease in their favor. This appeal by H & K ensued.
 

 Discussion
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
 
 Palmer v. Martinez,
 
 45,318 (La.App.2d Cir. 07/21/10), 42 So.3d 1147,
 
 units denied,
 
 2010-1952, 2010-1953, 2010-1955 (La.11/05/10), 50 So.3d 804, 805. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact.
 
 In re Clement,
 
 45,454 (La.App.2d Cir.08/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment will be granted “if |4the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B);
 
 Palmer, supra.
 

 On the motion for summary judgment, the burden of proof is on the movant. La. C.C.P. art. 966. When the movant, however, will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, he is not required to negate all the essential elements of the adverse party’s claim, action or defense. Rather, the movant need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim.
 
 Swillie v. St. Francis Medical Center,
 
 45,543 (La.App.2d Cir.09/22/10), 48 So.3d 317.
 

 The general rule prevailing with respect to the maintenance of oil, gas and mineral leases is that the drilling of a well on the premises covered by the lease during the primary term of the lease, assuming such well produces in paying quantities, maintains the lease as to all of the lands covered by the lease.
 
 Will-Drill Resources, Inc. v. Huggs Inc.,
 
 32,179 (La.App.2d Cir.08/18/99), 738 So.2d 1196,
 
 writ denied,
 
 1999-2957 (La.12/17/99), 751 So.2d 885; La. R.S. 31:114. As to the term of a mineral lease, “The interest of a mineral lessee is not subject to the prescription of nonuse, but the lease must have a term.” La. R.S. 31:115.
 

 H & K raises two assignments of error on its appeal of the judgment granting appellees’ motion for summary judgment. First, it argues that the |fitrial court erred in granting summary judgment in favor of Martin and Chesapeake, specifically in its determination that the language of the Lease provided for two different dates for termination of the Lease. Second, it argues that the Lease was ambiguous with reference to the termination date, and it must be construed against the lessee who prepared the contract. After a
 
 de novo
 
 review of the record, we conclude that H & K’s argument is without merit. The Lease is not ambiguous and the trial court was not in error in its interpretation in the appellees’ favor.
 

 The crux of H
 
 &
 
 K’s argument is that the original vertical well was abandoned on October 8, 2007, which resulted in the termination of the Lease under the first sentence of paragraph 6 of the Lease. H & K maintains that Dave Whitman, the
 
 *850
 
 District Manager for Chesapeake, stated that the initial vertical well was drilled and completed, then ultimately “abandoned” on October 8, 2007. H & K also alleges that according to Whitman’s testimony, no drilling or operations occurred until more than 90 consecutive days later. H & K submits that 90 days from October 8, 2007, would be January 8, 2008, and that Chesapeake Operating did not move back onto the site until mid-February 2008 when it began horizontal drilling operations.
 

 Initially, we note that H & K’s characterization by Whitman that the vertical well was “abandoned” is incorrect. He described that operations on the vertical well were “suspended” and explained that the vertical well was part of the entire operation of completing Chiggero 14-1. As explained by Whitman:
 

 The Chiggero well was drilled vertically as a pilot well to obtain information. We left it in a state that we could either | ^complete it vertically ... or we could take it horizontally if that’s what results told us.
 

 We drilled and completed some other wells after the pilot hole was drilled that told us horizontal was the way to complete it.
 

 Regardless, we consider the drilling of the vertical well on the tract as irrelevant as to any determination regarding the effect on the term. The vertical well was drilled during the primary term of the Lease, which explicitly provided for a term of three years from March 2005 and “as long
 
 thereafter
 
 as (1) oil, gas, sulphur or other mineral is produced from said land hereunder or from land pooled therewith, or (2) it is maintained in force in any other manner herein provided.” The unambiguous provisions of the Lease state that it would be maintained up to three years (i.e., until March 14, 2008). The vertical well was drilled during the primary term; however, under this Lease Chesapeake had no obligation to drill
 
 at all
 
 during the primary term of the Lease.
 
 See
 
 La. R.S. 31:115. Moreover,' even if the vertical well was considered “abandoned” and the first sentence of paragraph 6 was considered, the “abandonment” occurred on October 8, 2007, which date is well over the required 90 days prior to the end of the primary term of the Lease. Thus, the first sentence of paragraph 6 is inapplicable to these particular facts.
 

 Furthermore, only after the primary term of the Lease had run (i.e., “thereafter”), would the two alternatives delineated in paragraph 2 be examined to determine whether the primary term could be extended. At that point (after the primary term has expired) would consideration of Paragraph 6 be made. We note that it is an undisputed fact that Chiggero 14-1 was not 17producing before the expiration of the term, making that alternative for extending the term of the Lease inapplicable and necessitating a determination whether the primary term of the Lease would be “maintained in force in any other manner herein provided.”
 

 Paragraph 6, as stated herein, provides unambiguous provisions for the extension of the primary term beyond three years. The language of the Lease is clear, and the trial court made the correct linguistic determination. The second sentence of paragraph 6 is disjunctive and the action by Chesapeake Operating served to extend the term of the Lease. It is undisputed that Chesapeake Operating commenced horizontal drilling on the tract on February 17, 2008, which date is clearly prior to the expiration of the primary term of the Lease; nor is it disputed that Chesapeake Operating was engaged in continuous operations of the horizontal well through its completion. Therefore, because on March 14, 2008 (the date upon which the primary
 
 *851
 
 term would have expired) Chesapeake Operating was “then engaged in operations for drilling, completion or reworking, or operations to achieve or restore production, with no cessation between operations or between such cessation of production and additional operations of more than ninety (90) consecutive days,” the Lease was extended beyond the primary term by the operations and production that occurred. This determination by the trial court was not in error.
 

 Conclusion
 

 For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Martin Producing, L.L.C. and Chesapeake REnergy Corporation is affirmed. All costs of this appeal are assessed to H & K Limited of Louisiana, L.L.C.
 

 AFFIRMED.