GASKINS, J.
|?This appeal involves an insurer’s alleged failure to make medical payments owed under its policy after its insured, plaintiff Keith Brown, was injured in a car wreck. The insurer successfully sought summary judgment. The plaintiff appeals. We affirm the trial court judgment.
FACTS
On June 30, 2008, the plaintiff was injured in a two-car accident while riding as a guest passenger of Michael Darnell; that vehicle was insured by Southern United Fire Insurance Company (“Southern”). The other car, driven by Ronald Moseley, was insured by Shelter Mutual Insurance Company (“Shelter”).
At the time of the accident, the plaintiff had an auto policy -with State Farm Mutual Automobile Insurance Company (“State Farm”) which required it to provide medical payments up to $10,000 to the plaintiff *699 if he was injured in an auto accident. On July 8, 2008, State Farm was notified of the accident, and a claim was set up for the loss under the medical payments coverage. On July 18, 2008, State Farm was contacted by the office of Dr. Diane Sino at the Chiropractic Health Center and advised that Dr. Sino would be providing medical treatment to the plaintiff for the injuries he sustained in this accident. Thereafter, State Farm paid the submitted bills. In some instances, however, certain items on the bills were not paid due to invalid |sprocedure codes, the code’s inclusion in another procedure on the bill or because the code was used more than normally expected per visit. On those occasions, the doctor and the plaintiff were informed of the reasons for nonpayment in explanation of review forms. The record does not indicate that either the doctor or the plaintiff contested any of these nonpayments after receiving these explanation of review forms.
On August 5, 2008, the plaintiff was involved in another auto accident. On September 10, 2008, he informed State Farm that this accident had occurred and that Allstate Insurance Company would be responsible for the medicals incurred for that loss. This was confirmed in a three-way conference call between adjusters for the two insurance companies and the plaintiff. During this conversation, Allstate gave State Farm its claim number and told State Farm to forward its medical payments demand for reimbursement. The last payment made by State Farm to Dr. Sino was for treatment rendered on September 3, 2008; this payment was made prior to State Farm receiving notice of the second accident. On September 30, 2008, State Farm sought a refund from Allstate for inadvertent payments made prior to notification. However, the record does not indicate the outcome of this request.
|4In October 2008, State Farm received a letter from the plaintiffs lawyer advising of his representation of the plaintiff. In December 2008, the plaintiff filed suit against the drivers in the June 2008 accident and their insurers.
In May 2009, State Farm advised the plaintiffs attorney that it intended to pursue a subrogation claim of $3,894.82. (Review of the record indicates that this was the full sum paid out by State Farm pursuant to its medical payments coverage for the claim opened for the June 2008 accident.) State Farm requested that he take no action that might jeopardize these rights. In a letter dated August 18, 2009, plaintiffs counsel informed State Farm that he would protect State Farm’s subro-gation claim and receive a 40 percent fee pursuant to Moody v. Arabie, 498 So.2d 1081 (La.1986), but that he did not represent State Farm. In a fax to plaintiffs counsel dated August 18, 2009, State Farm confirmed its understanding that plaintiffs counsel was protecting its subrogation claim and that he agreed to pay State Farm $2,357.69, which was the full amount of its subrogation claim of $3,894.82, less the 40 percent attorney fees.
On August 18, 2009, the plaintiff reached a settlement with Moseley and Shelter. A “receipt and release” was executed on August 28, 2009, settling the plaintiffs claims against Moseley and Shelter for $13,000. The document included the following language:
| .^Claimant specifically reserves all rights against MICHAEL DARNELL and SOUTHERN UNITED FIRE INSURANCE COMPANY, which defendants are not made part of this agreement.
This Receipt and Release covers all rights and claims of every nature and kind whatsoever, known and unknown, that said claimant may have now or *700 which may subsequently arise as a result of said incident. Claimant agrees to hold the released parties harmless from any and all claims, suits and rights of every nature and kind whatsoever arising as a result of said incident, in addition to the payment of any attorney fees incurred in defending such claims or enforcing this provision.
[[Image here]]
IT IS FURTHER UNDERSTOOD AND AGREED that Claimant and his attorney represent and warrant that any and all liens and claims, including but not limited to the subrogation claim of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, will be satisfied from the settlement funds set forth herein and that Claimant and his attorney will indemnify and hold harmless the released parties regarding said liens and claims.
A check dated August 21, 2009, for $10,642.31 was issued payable to the plaintiff and his counsel. A cheek payable to the plaintiff and State Farm in the amount of $2,357.69 was also issued on August 21, 2009. In a letter dated September 11, 2009, plaintiffs counsel forwarded this check to State Farm, stating that it represented “full and final settlement for any subrogation rights that you have against Mr. Brown for payments made in reference to the accident of June 30, 2008.”
In the meantime, plaintiffs counsel sent a certified letter dated August 14, 2009, to State Farm stating that an outstanding balance of $458.18 was owed to Dr. | fiSino; the letter was not received by State Farm until at least August 19, 2009.[1] The attorney faxed a statement of account from Dr. Sino to State Farm. Review of this document indicates that the amount of $458.18 includes charges for treatment rendered after the second accident, as well as the previously mentioned uncontested nonpayments from the first accident. In September 2009, State Farm sent the attorney a letter reminding him of the process for payment of medical bills.
On September 24, 2009, the plaintiff sent State Farm a demand letter for $458.18. On November 12, 2009, the plaintiff filed the instant suit against State Farm, alleging nonpayment of his medical bills in the amount of $458.18; he requested damages and attorney fees for bad faith under La. R.S. 22:1973 and La. R.S. 22:1892. State Farm filed a general denial answer.
In March 2010, the plaintiff settled his claims against the remaining driver and his insurer. He received $5,000 from Darnell and Southern. This receipt and release contained the following provision:
Appearer [Keith Brown] further declares that ... he does hereby agree, bind and obligate [himself] to indemnify, hold harmless and defend all parties herein released of and from any and all claims or demands by any person, natural or legal, arising out of the accident of June 30, 2008, for payment or reimbursement of any cost arising from the disability of or medical care for KEITH BROWN. Appearer further agrees, binds and obligates himself to pay 17any and all medical liens for medical services arising from the accident of June 30, 2008, both known and unknown at the time of this settlement and to hold the parties released herein harmless, defend and to indemnify them of and for any and all claims or demands by any per *701 son, natural or legal asserting a medical lien.
In May 2011, State Farm filed a motion for summary judgment. It asserted it was not given notice of the amounts denied prior to the plaintiffs settlement with the liability carrier and that the settlement impaired its subrogation rights. In support of its claim, State Farm submitted an affidavit by one of its claims representatives, Susan Albritton. Ms. Albritton stated that after receiving notice of the June 2008 accident, State Farm paid bills submitted on the plaintiffs behalf by Dr. Sino. She detailed the history of State Farm’s payment of the plaintiffs claims from the time it was first informed of the June 2008 accident, until it was informed of the August 2008 accident, including its inadvertent payment of some bills attributable to the second accident. She also stated that State Farm did not receive additional medical bills for the June 2008 accident other than those already submitted and paid through September 10, 2008. State Farm also submitted Dr. Sino’s medical and billing records, as well as discovery responses by both parties.
The plaintiff filed an opposition to the motion for summary judgment. In support of his opposition, the plaintiff filed his own affidavit verifying that he had coverage provided by State Farm on the day of the June 2008 accident. Notably he |sdid not contradict any of the facts set forth in Ms. Albritton’s affidavit. Counsel for the plaintiff also submitted an affidavit, detailing his interaction with State Farm and the facts surrounding the settlement agreement reached with Moseley and Shelter on August 18, 2009.
A hearing was held on June 22, 2011. At the conclusion of argument, the trial court granted State Farm’s motion for summary judgment. A judgment in conformity with the court’s ruling was signed on June 24, 2011. The plaintiff appealed from the ruling granting State Farm’s motion for summary judgment.
LAW

Summary Judgment

Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Palmer v. Martinez, 45,318 (La.App.2d Cir.7/21/10), 42 So.3d 1147, writs denied, 2010-1952, 2010-1953, 2010-1955 (La.11/5/10), 50 So.3d 804, 805.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. In re Clement, 45,454 (La.App.2d Cir.8/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment will be granted if the pleadings, |fldepositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Palmer v. Martinez, supra.
Generally, the party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, it is not necessary to refute every element of the claim. In that case, the moving party need only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. art. 966(C)(2). The burden then shifts to the adverse party to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2).
*702 When the motion for summary judgment is made and supported as provided in La. C.C.P. art. 966, the adverse party “may not rest on the mere allegations or denials of his pleading,” but his response, by affidavits or other proper summary judgment evidence, “must set forth specific facts showing that there is a genuine issue for trial.” La. C.C.P. art. 967(B); Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 2009-1633 (La.4/23/10), 35 So.3d 1053.
| inInsurance
An insurer need not pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer’s liability or of the insured’s loss. However, an insurer must pay any undisputed amount over which reasonable minds could not differ. Louisiana Bag Company, Inc. v. Audubon Indemnity Company, 2008-0453 (La.12/2/08), 999 So.2d 1104.
Whether or not a refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the insurer at the time of its action. Scott v. Insurance Company of North America, 485 So.2d 50 (La.1986).
DISCUSSION
Our review of the evidence submitted on summary judgment reveals that the $458.18 claim from Dr. Sino may be broken down into two categories. The first includes items submitted to State Farm and denied due to invalid procedure codes, inclusion in another item on the same bill, or submission of multiple codes for the same thing for the same visit. These items totaled $252.86. The second category were items for treatments after the second accident; these amounted to $205.32.
On average, State Farm issued checks to pay the plaintiffs medical bills within approximately eight days of the date of treatment. On at least seven occasions, the bills were paid in full. On seven occasions, the only items not paid in a bill were a |nsecond — and possibly duplicative — $20 charge for hoi/cold pack. The $20 second hot/cold pack charge was denied for two additional doctor visits when other items were not paid as well. The other items not paid involved problems with the codes given; these code issues were explained on the explanation of review forms sent to the plaintiff and Dr. Sino.[2] However, the record does not indicate that the plaintiff or Dr. Sino brought any of these denials to State Farm’s attention or sought review of them after receiving the forms. Furthermore, once informed that there were problems with the codes given for these items, they apparently made no effort to supply State Farm with valid codes which might have rectified the matter.
We note that the undisputed charges were paid in a timely manner. As to the disputed charges, State Farm gave the plaintiff a timely explanation of its nonpayment of them. The plaintiff did not contest the nonpayments of the disputed charges. To the contrary, they were tacitly accepted by the plaintiff and his attorney when they utilized the sum of $3,894.82 — which did not include the disputed charges — as the full amount for State Farm’s claim in the plaintiffs settlement proceedings. (It was also apparently the amount used to calculate the Moody fee paid to plaintiffs counsel.) Under these circumstances, we cannot say that State Farm was unreasonable |12in not *703 paying the $252.86 for disputed items denied due to codes, much less that it was arbitrary or capricious in doing so.
As to the $205.82 in charges incurred after the second accident, we cannot say that State Farm was wrong for not paying them either. According to the affidavit of State Farm’s representative, the plaintiff himself called State Farm to inform it of the second accident and Allstate’s responsibility for his resulting medical treatments. There was a conference call between the plaintiff, State Farm and Allstate in which State Farm was advised how to seek reimbursement for claims it had already paid which resulted from the second accident. The plaintiff does not contradict any of this in his own affidavit. Therefore, we find that, for summary judgment purposes, there is no dispute as to this fact. Since the insured modified the contract with the insurer through his instruction to allow Allstate to pay the medical bills he incurred after the August 2008 accident, the insured cannot now accuse its insurer, State Farm, of wrongdoing for its compliance.
An insurer owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. La. R.S. 22:1973 (formerly La. R.S. 22:1220). Nothing in this record indicates that State Farm breached these duties to the plaintiff in the instant case.
11RBased upon the record before us, we find that summary judgment in favor of State Farm was appropriate.[3]
CONCLUSION
The trial court ruling granting summary judgment in favor of the defendant, State Farm Mutual Automobile Insurance Company, is affirmed. Costs of this appeal are assessed against the plaintiff, Keith Brown.
AFFIRMED.

. State Farm's claim representative asserted in her affidavit that it did not receive the letter until August 21, 2009. In his affidavit, the plaintiff's attorney states that it was received on August 19, 2009. The date on the certified return receipt in the record is illegible.

. These included two charges of $11.27 for biofreeze tube (invalid procedure code); one charge of $45.00 for a report of findings (code included in other procedure on bill), and one charge of $5.32 for postage (invalid procedure code).

. Because we have resolved the matter on another basis, we pretermit the issue of sub-rogation,