NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2104
_____

QUINCY MUTUAL FIRE INSURANCE COMPANY,
Appellant

v.

IMPERIUM INSURANCE COMPANY
f/k/a Delos Insurance Company
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cv-00612)
District Judge:  Honorable Jan E. DuBois
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 21, 2016

Before:  FISHER, CHAGARES and BARRY, *Circuit Judges*.

(Filed: February 29, 2016)
_____

OPINION*
_____

FISHER, *Circuit Judge.*

---

\*    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In this insurance coverage case, appellant Quincy Mutual Fire Insurance Company sought a declaratory judgment that appellee Imperium Insurance Company was obliged to reimburse Quincy Mutual more than $1 million for its defense and indemnification of one its insureds, Sunrise Concrete, Inc. Quincy Mutual asserted that Imperium had primary liability coverage over the claims against Sunrise Concrete. The district court entered summary judgment in Imperium's favor. We find that the district court correctly interpreted the insurance policies and the certificate of insurance and will affirm.

I

We write principally for the parties, who are familiar with the factual context and legal history of the case. Therefore, we set forth only those facts that are necessary to our analysis.

Sunrise Concrete was the concrete contractor for a housing development construction project in Pottstown, Pennsylvania. Sunrise Concrete subcontracted some of the concrete work, including the construction of porches, to Cruzeiro Novo under an oral agreement. A construction worker, Zhe Feng Huang, was injured while working on a porch roof. Huang sued Sunrise Concrete and others for negligence in Pennsylvania state court.

Sunrise Concrete's general liability insurance carrier was Quincy Mutual, who defended Sunrise Concrete against the suit. Quincy Mutual added Cruzeiro Novo's insurer, Imperium, as a defendant in the state-court litigation. Quincy Mutual asserted that Sunrise Concrete was an additional insured on Cruzeiro

2

Novo's policy and that Imperium was therefore obligated to defend Sunrise Concrete.

Before Sunrise Concrete permitted Cruzeiro Novo to perform work as its subcontractor, it sought assurance from Cruzeiro Novo that it was an additional insured on Cruzeiro Novo's policy. Cruzeiro Novo produced a certificate of liability insurance that stated, "Sunrise Concrete Company Inc. is named as additional insured."[1] The certificate, however, bore this warning: "This certificate is issued as a matter of informatio [sic] only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below."[2] The certificate of insurance was issued by Fairways Insurance Services, an agent of Imperium.

At the time of Huang's injury, Cruzeiro Novo's insurance policy with Imperium contained a blanket additional insured endorsement:

> *Insured* includes any person or organization that *you* have agreed in a written contract or agreement to add as an additional *insured* on this policy, but only with respect to liability arising out of *your work* for such person or organization.[3]

Because Cruzeiro Novo worked as Sunrise Concrete's subcontractor under an oral agreement and not a written contract, Imperium asserted that Sunrise Concrete was not an insured under the additional insured endorsement.

---

1. App. 159.
2. *Id.*
3. App. 254.

Quincy Mutual settled Huang's suit against Sunrise Concrete for $1 million but reserved its rights against Imperium and filed this declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania. Quincy Mutual and Imperium filed cross motions for summary judgment. The district court granted Imperium's motion and denied Quincy Mutual's motion.

## II[4]

We review the district court's grant of summary judgment de novo and apply the same standard as the district court.[5] Summary judgment is appropriate when no material facts are genuinely disputed and the movant is entitled to judgment as a matter of law.[6]

Quincy Mutual argues the district court erred by granting Imperium summary judgment for three reasons. One, the phrase "written contract or agreement" in Cruzeiro Novo's policy with Imperium is ambiguous and must be construed against Imperium because it could mean "written contract or *oral* agreement." Two, Imperium is bound by certificate of insurance issued by its authorized agent, Fairways Insurance Services. Three, Imperium is equitably estopped from denying insurance coverage because of the statement in the certificate of insurance that

---

4. The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1). We have appellate jurisdiction to review the district court's final decision under 28 U.S.C. § 1291.

5. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011).

6. Fed. R. Civ. P. 56(a).

Sunrise Concrete was named an additional insured. We address each of these arguments in turn.

A

Quincy Mutual argues that summary judgment was improper because the blanket additional insured endorsement is ambiguous. We apply state law to contract disputes in diversity cases. There is some question whether Pennsylvania or New Jersey law applies in this case.[7] The district court, with the concurrence of the parties, found that the interpretation of insurance contracts is "largely the same" under Pennsylvania and New Jersey law and that the result would be identical under the law of either state.[8] For the sake of consistency, the district court applied Pennsylvania law in its analysis of the insurance policy. Neither party objected to this approach, and we will likewise apply Pennsylvania contract law.

Under Pennsylvania law, courts interpret the meaning of insurance contracts by determining the intent of the parties as expressed by the policy language.[9] If the language is unambiguous, the express terms of the contract are controlling.[10] An

---

7. Imperium issued its policy to Cruzeiro Novo, a New Jersey corporation, in New Jersey. The additional insured endorsement and certificate of insurance were issued by Fairways in New Jersey. The construction site where Huang was injured was in Pennsylvania. Huang sued in Pennsylvania, and Quincy Mutual sued Imperium in Pennsylvania.

8. App. 7 n.6.

9. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

10. *Id.*

ambiguous policy term is construed against the insurer.[11] A contractual provision is ambiguous if it can reasonably be understood to have more than one meaning.[12] But a court may not strain or distort the language to find an ambiguity where none exists.[13]

Quincy Mutual argues that the term "written contract or agreement" is ambiguous because it could mean "written contract or (any written or oral) agreement" or "written contract or (written) agreement." The first construction is conceivable,[14] but the only reasonable interpretation is the second. In this phrase, "written" modifies both "contract" and "agreement." To read it otherwise would render "written" meaningless.[15] The district court correctly interpreted the contract.

---

11. *Id.*

12. *Id.*

13. *Id.*

14. *See Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982) ("[S]carcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity.").

15. Quincy Mutual cites a trio of New York cases that found "written contract or agreement" or similar terms ambiguous. *Superior Ice Rink, Inc. v. Nescon Contracting Corp.*, 861 N.Y.S.2d 362, 365 (App. Div. 2008); *Travelers Indem. Co. of Am. v. Royal Ins. Co. of Am.*, 802 N.Y.S.2d 125, 126 (App. Div. 2005); *Bassuk Bros. v. Utica First Ins. Co.*, Nos. 15285/00, 75219/01, 2002 WL 31925593, at *5 (N.Y. Sup. Ct. Nov. 1, 2002). Like the district court, we find these decisions unpersuasive. Courts from a variety of jurisdictions agree with the conclusion that "written contract or agreement" unambiguously requires a written document. *Palmer v. Martinez*, 42 So. 3d 1147, 1154 (La. Ct. App. 2010) ("Although it is linguistically possible to read the target provision in such a way that the adjective 'written' modifies only 'contract,'

The parties agree that there was no written contract or agreement between Sunrise Concrete and Cruzeiro Novo. Under the express terms of the endorsement, Sunrise Concrete was not an additional insured and Imperium was not obligated to defend and indemnify it.

B

Quincy Mutual next argues that Imperium is bound by the certificate of insurance issued by Fairways, Imperium's authorized agent.[16] The certificate of insurance stated that Sunrise Concrete was an additional insured on Cruzeiro Novo's policy with Imperium. Under Pennsylvania law, "an insurer is liable for the acts of an agent who had authority to bind coverage and had advised the policyholder that he had done so."[17]

---

that does not render such an interpretation reasonable."); *U.S. Fire Ins. Co. v. Hartford Ins. Co.*, 726 N.E.2d 126, 129 (Ill. Ct. App. 2000) ("Plaintiffs' construction [that 'agreement' may be interpreted to include either a written or oral agreement] leads to an absurd result."); *Mich. Mut. Ins. Co. v. Red Fox Tavern, Inc.*, No. 92-CA-93, 1993 WL 360722, at *2 (Ohio Ct. App. Aug. 17, 1993) ("[R]easonable persons could not conclude that by using the conjunctive 'or,' appellant provided coverage for liability assumed by a written contract or by any agreement, whether written or oral."); *Indem. Ins. Co. of N. Am. v. Pac. Clay Prods. Co.*, 91 Cal. Rptr. 452, 458 (Ct. App. 1970) (finding an interpretation permitting oral agreement "unreasonable and absurd").

16. Quincy Mutual confines this argument to a claim that Fairways had actual authority and makes no assertion that Fairways could bind Imperium through apparent or implied authority.

17. *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1138 (Pa. Super. Ct. 2003).

7

Fairways did not have authority to add Sunrise Concrete as an additional insured through a certificate of insurance. The certificate of insurance specifically stated that it was for informational purposes only and did not modify the terms, exclusions, or conditions of the policy.[18] The statement in the certificate of insurance that Sunrise Concrete was an additional insured was without effect.

C

Finally, Quincy Mutual argues that, even if Sunrise Concrete was not an additional insured under the policy endorsement or certificate of insurance, Imperium is estopped from denying coverage due to the statement in the certificate of insurance. Under both Pennsylvania and New Jersey law, to establish coverage by estoppel, the insured must have reasonably and detrimentally relied on a misstatement by the insurer that coverage existed.[19] The district court correctly determined that no reasonable jury could find that Sunrise Concrete reasonably relied on the certificate of insurance. It is unreasonable to rely on a certificate of insurance that explicitly disclaims conferring any rights.[20]

---

18. App. 159; *see also* 17 Lee R. Russ et al., *Couch on Insurance* § 242:33 (3d ed. 2005) ("Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy. A certificate of insurance is not part of the policy—if it states that there is coverage but the policy does not, the policy controls.").

19. *McDonald v. Keystone Ins. Co.*, 459 A.2d 1292, 1295 (Pa. Super Ct. 1983); *Harr v. Allstate Ins. Co.*, 255 A.2d 208, 219 (N.J. 1969).

20. *See Couch on Insurance* § 242:33; *see also Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam) ("Given the numerous limitations and exclusions that often encumber such policies, those who take such

## III

For the foregoing reasons, we will affirm the judgment of the district court.



certificates at face value do so at their own risk."); *Ala. Elec. Coop., Inc. v. Bailey's Constr. Co.*, 950 So. 2d 280, 286 (Ala. 2006) (finding reliance on certificate of insurance unreasonable as a matter of law); *Greater N.Y. Mut. Ins. Co. v. White Knight Restoration, Ltd.*, 776 N.Y.S.2d 257, 258 (App. Div. 2004) (finding, in context of a fraud claim, no reasonable reliance on certificates of insurance "in the face of their disclaimer language").