# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 14-282

**DANIEL HYATT**

**VERSUS**

**MUTUAL OF OMAHA INS. CO., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-3932
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Billy Howard Ezell, and J. David Painter, Judges.

**REVERSED IN PART; AFFIRMED AS AMENDED.**

**William E. Wright, Jr.**
**Deutsch, Kerrigan & Stiles**
**755 Magazine St.**
**New Orleans, LA 70130-3672**
**(504) 581-5141**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Larry Perron**
**Thomas Edward Loehn**
**Boggs, Loehn & Rodrigue**
**2324 Severn Ave., Suite 100**
**Metairie, LA 70001**
**(504) 828-1202**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Mutual of Omaha Insurance Company**

**Gregory Paul Allen Marceaux**
**Marceaux Law Firm**
**2901 Hodges St.**
**Lake Charles, LA 70601**
**(337) 310-2233**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
   **Daniel Hyatt**

**EZELL, Judge.**

This appeal involves the reformation of a disability benefits insurance policy issued by Mutual of Omaha Insurance Company (Mutual) to Daniel Hyatt. The trial court found the policy language was ambiguous and reformed the policy to allow Mr. Hyatt to receive full recovery of benefits. The trial court also awarded penalties and attorney fees. The trial court refused to allow a reduction in benefits based upon Mr. Hyatt's receipt of social security benefits. However, the trial court granted Mutual's motion for remittitur based on the settlement by its agent Larry Perron with Mr. Hyatt, finding the two parties to be solidary obligors. Mutual filed the present appeal seeking reversal of the judgment, and Mr. Hyatt answered the appeal seeking reversal of the grant of the remittitur and additional attorney fees for work performed at the appellate level.

## FACTS

Daniel Hyatt drove an eighteen-wheeler for a living. In January 2000, he applied for an income replacement policy with Mutual with the help of its agent, Larry Perron. In the application, Mr. Hyatt was required to list "Gross annual earned income from your occupation (after business expenses)." He listed his current salary as $60,000.00 and his previous year's salary as $90,000.00. Mr. Hyatt was issued a policy costing $90.18 a month and providing benefits of $2,000.00 a month for two years if Mr. Hyatt became disabled from working.

In August 2002, Mr. Hyatt began having difficulty walking and keeping his balance. In March 2003, he was diagnosed with spinal muscular atrophy. Spinal muscular atrophy causes muscle weakness and wasting. In September 2006, Mr. Hyatt made a claim with Mutual for disability benefits. Mutual sent a letter to Mr. Hyatt informing him of the information it needed to begin processing his claim.

Mutual also sent forms that needed to be completed. Mutual never received the requested information from Mr. Hyatt, so it mailed additional letters requesting the information. Mr. Hyatt never proceeded with his claim for disability benefits at that time.

Subsequently, Mr. Hyatt again sought disability benefits from Mutual in March 2008, claiming that he was no longer able to work as of February 1, 2008. In processing his claim, Mutual requested his 2006 and 2007 tax returns. Mr. Hyatt responded by sending the 2005 and 2006 tax returns because his 2007 tax returns had not been prepared. He also enclosed his denial of disability benefits letter from the social security administration from when he applied for benefits in 2006.

Based on the information in the tax returns, Mutual informed Mr. Hyatt on June 9, 2008, that his benefits would be reduced to $200.00 a month. Taking into account that Mr. Hyatt was a sole proprietor, Mutual utilized his net income with the addition of any depreciation expense in calculating his entitlement to disability benefits. This resulted in a negative or minimum income. Using this amount of income, Mr. Hyatt was not entitled to disability benefits. However, pursuant to a relation-to-earnings provision in the policy, $200.00 was the minimum that could be paid to Mr. Hyatt. He was issued a disability draft in the amount of $400.00, representing two months' disability benefits. Based on the same provision, Mutual also refunded 90% of the premiums Mr. Hyatt paid to Mutual in the previous twenty-four months in the amount of $1,947.88. This is because he did not qualify for the benefits he paid for.

After receiving the 2007 tax returns, Mutual adjusted Mr. Hyatt's benefits to $436.00 a month versus $200.00 a month. This meant an additional payment of

$472.00 was due but also meant that the refund of the premium should have only been $1,670.76 instead of $1,947.88 for a difference of $277.12. Therefore, Mutual sent an additional check in the amount of $194.88 representing the difference between the benefits of $472.00 due minus the overpayment of the premium due of $277.12.

Mutual also requested that Mr. Hyatt provide monthly continuation of disability forms in order to continue his disability past July 1, 2008. Following multiple requests for the forms, Mr. Hyatt's file was closed in November 2008. Mr. Hyatt never received any additional benefit checks.

On July 17, 2008, Mr. Hyatt filed suit against Mutual and Larry Perron who sold him the disability insurance policy claiming entitlement to $2,000.00 a month in benefits. He also sought damages, penalties, and attorney fees. Mr. Hyatt later amended his petition asking for reformation of the policy to conform to the original intent that it provided disability insurance coverage in the amount of $2,000.00 per month because Mr. Perron represented that the application required him to list his gross annual income.

On February 23, 2009, Mr. Hyatt filed another claim for social security benefits, claiming to be disabled as of September 1, 2007. After an investigation, the Social Security Administration determined that he was disabled.

A bench trial was held in May 2013. After two days of trial, Mr. Hyatt settled with Mr. Perron for $25,000.00. The trial proceeded, and the trial court ruled from the bench on May 16, 2013. The trial court found the policy to be ambiguous regarding the definition of "earnings" and ordered that the policy be reformed to reflect the intention of the parties that Mr. Hyatt was entitled to $2,000.00 a month in disability benefits. The trial court also determined that Mr.

Hyatt was entitled to the full two-year period of benefits. Pursuant to La.R.S. 22:1821, the trial court awarded penalties in the amount of $48,000.00 and $27,204.00 in attorney fees. In considering Mutual's motion for remittitur filed after the trial, the trial court reduced the award to Mr. Hyatt by $25,000.00 based on his settlement with Mr. Perron, finding Mr. Perron to be a solidary obligor with Mutual.

Final judgment was signed on October 13, 2013. Mutual filed the present appeal, and Mr. Hyatt answered the appeal.

## Amount of Benefits

The main argument by both sides in this case involves the definition of "earnings" when calculating the amount of benefits, or extent of coverage, Mr. Hyatt is entitled to. Mutual argues that the policy requires that his net earnings, earnings after business expenses, should be utilized. Mr. Hyatt argues that his gross earnings should be utilized. In making its ruling, the trial court found the policy issued by Mutual was ambiguous regarding the meaning of "earnings." The trial court further found that Mr. Perron knew that Mr. Hyatt intended to purchase a policy which would provide benefits in an amount which would cover his eighteen-wheeler truck note if he became disabled. The trial court then reformed the insurance policy to provide that Mr. Hyatt's gross earnings would be considered in determining the amount of benefits he was entitled to.

An insurance policy is a contract between the insured and insurer and is the law between the parties which governs their relationship. La.Civ.Code art. 1983; *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024. In interpreting insurance policies, courts should use general rules of contract interpretation while determining the common intent of the parties as reflected by the words of the

4

insurance policy. *Id.*; La.Civ.Code art. 2045; *Highlands Underwriters Ins. Co. v. Foley*, 96-1018 (La.App. 1 Cir. 3/27/97), 691 So.2d 1336.

"The parties' intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning." *Palmer v. Martinez*, 45,318, p. 5 (La.App. 2 Cir. 7/21/10), 42 So.3d 1147, 1151; La.Civ.Code art. 2047. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent" and the policy must be enforced as written. La.Civ.Code art. 2046; *Peterson*, 729 So.2d 1204; *Highlands Underwriters*, 691 So.2d 1336. An insurance policy should not be interpreted in an unreasonable manner beyond what is reasonably contemplated by unambiguous terms. *Peterson*, 729 So.2d 1204. When an insurance policy contains a definition of any word or phrase, the definition is controlling. *Washington v. McCauley*, 45,916 (La.App 2 Cir. 2/16/11), 62 So.3d 173, *writ denied*, 11-578 (La. 4/25/11), 62 So.3d 115.

"When there is uncertainty or ambiguity as to the terms of a written contract because its provisions are susceptible to more than one interpretation, or when the intent of the parties cannot be ascertained from the language employed, parole evidence is admissible to clarify the ambiguity or show the intention of the parties." *Highlands Underwriters*, 691 So.2d at 1340-41. When there is ambiguity, then the court must construe the contract according to the intent of the parties, which is an issue of fact to be inferred from the surrounding circumstances. *Id.* "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the

contract, and of other contracts of a like nature between the same parties" La.Civ.Code art. 2053; *Highland Underwriters*, 691 So.2d 1336.

The determination of whether a contract is ambiguous or not is a question of law. *Highland Underwriters*, 691 So.2d 1336; *Palmer*, 42 So.3d 1147. In the case where factual findings are pertinent to the interpretation of a contract, the factual findings of the trial court are not to be disturbed unless manifest error is shown. *Id.*

In the case before us, the trial court made a determination that the insurance policy was ambiguous as to the definition of "earnings" and a factual determination that the policy's language did not provide for the use of Mr. Hyatt's gross earnings in calculating his benefit entitlement as contemplated by the parties when Mr. Hyatt bought the policy. Therefore, as in *Highland Underwriters*, we must first determine if the meaning of "earnings" in the policy issued to Mr. Hyatt by Mutual was ambiguous as found by the trial court. If we find that the language of the policy is explicit and unambiguous, then the policy must be enforced as written. However, if the language of the policy is unclear and ambiguous, the policy must be construed in light of the intention of the parties.

**Ambiguity**

Pursuant to Part P of the insurance policy, the amount of disability owed to Mr. Hyatt is determined by his earnings at the time his disability starts as follows:

> **Relations of Earnings to Insurance**: The Monthly Benefit will be payable on a reduced basis when you have too much loss of earnings or disability coverage for what you earn. You will be deemed to have too much loss of earnings or disability coverage when the total amount of weekly or monthly benefits under all of your valid loss of earnings or disability coverage is more than the weekly or monthly earnings you had when the disability started, or more than your average weekly or monthly earnings for the two years just before the loss started, whichever is greater. The amount of benefits payable under this policy will be that proportionate amount of such benefits as the amount of such weekly or monthly earnings bears to the total

6

amount of weekly or monthly benefits for the same loss under all such coverages that you had when the disability started.

The dispositive issue in the case requires an interpretation of the provision in the Mutual policy defining "earnings" and whether it is clear or ambiguous as to the use of gross or net earnings. The policy issued to Mr. Hyatt defined "earnings" in the definitions section found in Part F as "salaries, bonuses, commissions, fees and other amounts received for personal services rendered or work performed. Earnings do not include dividends, rents, royalties, annuities or other forms of unearned income. Proof of earnings may be required when filing a claim."

Clearly, there is no language indicating whether net or gross earnings are to be used in determining the amount of benefits are payable. Mr. Hyatt received money for driving the truck which would be listed as his gross income. There is also no requirement in the definition of "earnings" that business expenses be deducted from earnings. Complicating the matter even further is the application filled out by Mr. Hyatt which requested "Gross annual earned income from your occupation (after business expenses)."

Louisiana Revised Statutes 22:881 provides that an application attached to or made part of the policy becomes part of the policy. "[T]he intent to make the application part of the insurance contract must be clearly expressed on the face of the policy." *Peterson*, 729 So.2d at 1031. The first page of the policy provides that: "The premium you paid, the application you completed and our reliance on your answers to the application questions have put this policy in force on the Policy Date. That date is shown on the Schedule. A copy of your application is attached."

The application itself refers to "gross income" but then attempts to define gross income as not including business expenses. This itself is confusing because the application could have simply asked for net income. Therefore, we find that the policy was not clear and unambiguous and will look to the parties' intent as to whether gross or net income should be used in calculating the amount of benefits.

**Intent**

Judith Edwards, now retired from Mutual, was a specialist assigned to Mr. Hyatt's case. As a specialist, she would review files handled by a claims analyst. Ms. Edwards agreed that Mr. Hyatt would qualify for $2,000.00 a month if Mutual used his gross earnings. She admitted that the definition of earnings in the policy did not state that business expenses were to be deducted, nor did it state that any depreciation amount was to be added back to the net income amount, as Mutual did, in determining Mr. Hyatt's monthly benefit. Ms. Edwards testified that Mutual customarily deducted business expenses of a sole proprietor, although there is no provision in the policy that allows this.

Mr. Perron testified that Mr. Hyatt came to him because he wanted income protection. The application was filled out in his office. Mr. Hyatt explained that he wanted to purchase an insurance policy that would pay the truck note if he became disabled. He indicated that when he filled out the application he thought Mutual was asking for gross income as opposed to net income. Mr. Hyatt's wife, Judy, agreed that they wanted to purchase insurance to cover the truck note in case Mr. Hyatt became sick or disabled. She also thought Mutual was requesting gross amount of income.

The parties themselves were not clear on whether gross or net earnings should be used. Mr. Hyatt clearly thought gross income was the proper amount to

8

submit based on the language in the application. Mutual was of the opinion that it could use net earnings since Mr. Hyatt was a sole proprietor.

While the trial court did not give a lot of weight to Mr. Hyatt's testimony on other issues, it did find that Mr. Hyatt's testimony that he wanted a policy of insurance to cover his truck note credible. We find no error in this ruling. After reviewing the policies and the testimony of the parties, we agree with the trial court and find that the policy is ambiguous as to whether gross or net earnings should be used in determining the amount of disability benefits an insured is entitled to receive.

Both sides have based their arguments on the fact that the trial court reformed the insurance policy to reflect the parties' intentions. Reformation is used by the courts when the policy issued does not express the agreement of the parties. A policy that is reformed may not necessarily contain any ambiguities. However, in this case, there is no need to reform the policy to conform to the parties' intentions since we agree that an ambiguity exists. *See Peterson*, 729 So.2d 1024. Our law clearly provides what to do when an insurance policy contains an ambiguous provision.

If an ambiguity remains in an insurance policy after applying the general rules of construction, the ambiguous contractual provision is to be construed against the insurer who furnished the policy's text and in favor of the insured. La.Civ.Code art. 2056; *Peterson*, 729 So.2d 1024. Since we find that the policy issued to Mr. Hyatt contains an ambiguity, we must construe the provision against Mutual and in favor of Mr. Hyatt. Therefore, we find that the trial court was correct in using gross earnings as opposed to net earnings in determining the amount of disability benefits.

Mutual also argues that it was error for the trial court to use the gross receipts of Hyatt Trucking, LLC to establish Mr. Hyatt's personal income. Mr. Hyatt submitted his 2005, 2006, and 2007 tax returns to Mutual as proof of his earnings prior to his disability. These tax returns were introduced into evidence at trial.

At trial, Mr. Hyatt introduced the testimony of his CPA, Darla Perry, who prepared the tax returns. Ms. Perry explained that Schedule C attached to an income tax return is a schedule of income of a sole proprietorship. It includes gross income and deductions of a business. She further explained that Hyatt Trucking, LLC is a sole member limited liability company so you include its income on the member's tax returns.

The law does provide that a limited liability company is a juridical person and that an LLC and its member(s) are wholly separate persons. La.R.S. 12:1301; *Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So.3d 888. However, the law further provides that the profits and losses of a limited liability company are to be allocated among the members. La.R.S. 12:1323.

We find that the trial court did not err in using Mr. Hyatt's gross earnings as listed on his income tax returns since he is a member of Hyatt Trucking, LLC and included its profits and losses on his personal income tax returns. As previously stated, there is no dispute that Mr. Hyatt would be entitled to the maximum benefit provided by the policy issued to him by Mutual when using his gross earnings. Therefore, based on Mr. Hyatt's earnings, he was entitled to receive a monthly benefit in the amount of $2,000.00.

## TOTAL AND PERMANENT DISABILITY

Mutual claims that the trial court erred in finding Mr. Hyatt totally and permanently disabled and exempt from having to provide updated proof of his disability in order to continue receiving his benefits. Mutual argues that Mr. Hyatt's tax returns after 2008 make it clear that he continued to work and that no one drove his truck for him, not even his wife. The trial court recognized that Mr. Hyatt had credibility issues. However, it found that Mr. Hyatt was entitled to the full amount of policy coverage based on the language of the policy. It found that the physician's statement that Mr. Hyatt was unable to work from "February 1, 2008 to lifetime" was sufficient to establish his disability and no more paperwork was required.

In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test: (1) the appellate court must find that a reasonable factual basis does not exist in the record for the finding; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong/manifestly erroneous. *Stobart v. State through the Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

Under Mutual's policy benefits are payable for loss or earnings resulting from an injury or sickness. "Sickness" is "a sickness, disease, or physical condition" which causes loss while the policy is in force and is not excluded from coverage. Mutual's policy provides for "Total Loss of Earnings" when the insured is unable to earn more than 30% of his average earnings in any occupation for which he is suited because of education, training, or experience, and received medical treatment.

After reviewing the policy, we agree with Mr. Hyatt that there is no provision that requires Mr. Hyatt to give monthly notice of his continuing disability. We further agree with the trial court that the statement by Mr. Hyatt's doctor that he was permanently disabled from working for the rest of life was sufficient to prove his claim that he was medically unable to work.

At trial, Mr. and Mrs. Hyatt explained that she drove the truck once he could no longer drive it. Mr. Hyatt testified that he did not drive the truck in 2009, but he was confronted with his deposition testimony in which he stated that he drove the truck in 2009. Mrs. Hyatt explained that she got her commercial driver's license in 2010. Before she got her license, Mrs. Hyatt stated that another company was using the truck with other drivers even though their tax returns indicated fuel expenses in those years. She could not remember the name of the company and had no records because they burned the records when cleaning the files.

Mutual introduced the testimony of Geraldine Duplantis, the region manager with the Office of Motor Vehicles. Ms. Duplantis testified that the first date that Mrs. Hyatt received her commercial driver's license was June 11, 2012. On rebuttal, Mrs. Hyatt explained that she had a learner's permit before 2012 which allowed her to drive the truck legally with a licensed driver before she got a commercial driver's license.

Mr. Hyatt testified that his disease has gotten progressively worse since he was first diagnosed in 2002. Mrs. Hyatt testified that her husband cannot walk without stumbling or losing his balance. This probably explains why he applied for disability benefits in 2006. Mr. Hyatt explained that he returned to his doctor asking him to let him continue working in 2006 so he did not continue pursuing his

disability claim with Mutual. Finally, in 2008 he could not work anymore, which is when he once again applied for disability benefits.

When Mr. Hyatt sought social security disability benefits again in 2009, he was sent for an independent medical examination with the Southern Medical Group. The doctor that examined Mr. Hyatt made the following observation regarding his disease:

> The claimant has a history of spinal muscular atrophy followed by a neurologist and his examination findings are consistent with this disease process. This disease currently has a dismal prognosis and ultimately results in eventual death secondary to weakness of respiratory muscles requiring mechanical ventilation. The progression of the disease is variable but relentless with an uncertain time frame. There is no effective therapy for his condition and treatment is supportive.

We agree with the trial court that the Hyatts have some serious credibility issues. However, we also find that there is sufficient other evidence to support the trial court's determination. There is no doubt that Mr. Hyatt suffers with spinal muscular atrophy as diagnosed by a doctor. This disease progresses over time. According to the doctor, this illness rendered Mr. Hyatt unable to work as of February 2008. Based on our review of the testimony and evidence in the record, we find no error in the trial court's determination that Mr. Hyatt was totally and permanently disabled entitling him to benefits under Mutual's policy.

## OFFSET FOR SOCIAL SECURITY

Pursuant to Part G of the Mutual policy, benefits payable are reduced by other income replacement benefits. The policy provides that income replacement benefits include social security disability or retirement benefits. During the course of discovery, Mutual was informed that Mr. Hyatt again applied for social security disability benefits. It then obtained the social security file and introduced part of it

13

at trial. At trial, Mr. Hyatt objected to the introduction of any evidence regarding payment of social security disability benefits because Mutual did not specifically plead offset as an affirmative defense. Mutual argues that the trial court erred in not allowing it an offset for social security benefits because it pleaded all terms and conditions of the policy in its answer and it is simply seeking to enforce the terms and conditions of its policy. Mutual claims that the reduction of benefits based on Mr. Hyatt's receipt of social security disability benefits is not a policy exclusion under which coverage is barred. Rather, offset is part of the coverage itself and the calculation of benefits, so it was not necessary to plead it as an affirmative defense.

Pursuant to La.Code Civ.P. art. 1005, an affirmative defense must be specifically pled in the answer. The determination of whether an issue is an affirmative defense is a question of fact resolved by examining the circumstances of the individual case. *Fishbein v. State, ex rel. LSU Health Sciences Ctr.*, 06-549 (La.App. 1 Cir. 3/9/07), 960 So.2d 67, *writ denied*, 07-730 (La. 6/22/07), 959 So.2d 495. "[A]n affirmative defense raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action. The new matter must be one, however, that is not raised in the plaintiff's petition." *Sher v. Lafayette Ins. Co.*, 07-2441, p. 23 (La. 4/8/08), 988 So.2d 186, 204. Offset has been recognized as an affirmative defense which must be specifically pled in the defendant's answer. *Ducote v. City of Alexandria*, 95-1197 (La.App. 3/6/96), 670 So.2d 1378.

In *Fishbein*, 960 So.2d 67, and *Bates v. City of New Orleans*, 13-1153 (La.App. 4 Cir. 3/26/14), 137 So.3d 774, the issues involved computation of benefits available to the plaintiffs under different statutory schemes. The plaintiffs argued that the defendants should have raised the defenses to the computations

contained in the statutory schemes as an affirmative defense. The appellate courts held that a defense to a plaintiff's claim that arises by operation of the law under which the plaintiff is seeking recovery need not be affirmatively pleaded because there can be no unfair surprise since no one may avail himself of ignorance of the law.

Mutual claims that the offset it is seeking is simply part of the calculation of benefits owed to Mr. Hyatt. It argues that it is not an exclusion to receipt of benefits.

We find that offset in this case is an affirmative defense because it reduces the full coverage Mr. Hyatt is entitled to under the policy. The fact that it is not defined as an exclusion in the policy makes no difference in the effect it has the receipt of benefits. In this specific case, Mr. Hyatt has never raised any issue regarding the receipt of social security disability benefits. While, Mutual did make a blanket claim of all provisions in the policy, it was still required to specifically plead the affirmative defense of offset because it was a new matter not raised by Mr. Hyatt. *See Sher*, 988 So.2d 186. Even after discovering that Mr. Hyatt applied for social security disability benefits, Mutual never amended its answer to assert the affirmative defense of offset. For these reasons we find the trial court was correct in excluding any evidence of offset.

## PENALTIES AND ATTORNEY FEES

Mutual claims the trial court erred in finding it liable for penalties and attorney fees pursuant to La.R.S. 22:1821. Louisiana Revised Statutes 22:1821(A) provides:

> All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B of this Section, shall be paid not more than thirty days from the date

15

upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney fees to be determined by the court. Any court of competent jurisdiction in the parish where the insured lives or has his domicile, excepting a justice of the peace court, shall have jurisdiction to try such cases.

Mutual argues that its actions were not arbitrary and capricious and its decision to not pay benefits to Mr. Hyatt was based on a reasonable interpretation of the policy language and the facts and circumstances that were presented to it at the time Mr. Hyatt made his claim for disability.

The insurer assumes the risk of misinterpreting its own policy provisions. *Barton v. Avoyelles Parish Sch. Bd.*, 13-445 (La.App. 3 Cir. 4/9/14), ___ So.3d ___. The determination of whether or not an insurer has just and reasonable grounds for refusal to pay insurance policy benefits is a question of fact which is to be determined based on the individual facts and circumstances of each case. *Id.* Factual determinations by the trial court will not be overturned in the absence of manifest error. *Id.*

As previously discussed, Mutual's policy does not even come close to defining the use of gross or net income in calculating the amount of benefits Mr. Hyatt is entitled to. The policy does not indicate that sole proprietors are to be treated differently than other insureds in determining the amount of income used for calculating disability benefits. Furthermore, the policy contains no provision which requires an insured to provide monthly updates of his continuing disability.

16

Mr. Hyatt submitted satisfactory proof of his claim, and Mutual simply made a decision based on its internal practices and procedures in making its decision that Mr. Hyatt was not entitled to full benefits under the policy and in discontinuing the benefits it was paying. We find the trial court was correct in assessing penalties and attorney fees.

## REMITTITUR

In his answer to the appeal, Mr. Hyatt seeks a reversal of the partial granting of Mutual's motion for remittitur, which reduced the judgment against Mutual by $25,000.00. Prior to judgment, Mr. Hyatt settled with Mr. Perron for $25,000.00. Mutual claimed it was entitled to a reduction in judgment because Mr. Perron was a solidary obligor.

Pursuant to La.Civ.Code art. 1803, remission of a debt by the obligee in favor of one obligor, benefits the other solidary obligors in amount of the portion of that obligor. "When a plaintiff settles with and releases one of several joint tortfeasors, he deprives the remaining obligors of the right to contribution against the released obligor." *Farbe v. Cas. Reciprocal Exch.*, 00-76, p. 4 (La. 7/6/00), 765 So.2d 994, 996. A plaintiff has no further rights against a released solidary obligor to which a remaining obligor can be subrogated. *Id.*

Under La.Civ.Code art. 1804 and comparative fault principles, "judgments are reduced in proportion to the percentage of fault allocated to the released tortfeasor." *Id.* at 997. "Importantly, a nonsettling tortfeasor is entitled to a reduction in the judgment only if he proves at trial that the released party was at fault and therefore solidarily liable." *Id.*

Regardless of whether Mr. Perron is a solidary obligor, the judgment does not assess any fault to Mr. Perron. In oral reasons the trial court found that Mr.

Perron and Mutual were solidary obligors. However, it never made a finding as to what percentage of fault should be assessed to Mr. Perron, if any. *See Bridges v. State,* DOTD, 32,018 (La.App. 2 Cir. 6/16/99), 738 So.2d 1149. Mutual has not appealed a finding that Mr. Perron was not assessed any fault. Furthermore, our ruling in this case finds that Mutual is liable to Mr. Hyatt because its policy was ambiguous not because of Mr. Perron's actions. Therefore, Mutual is 100% responsible to Mr. Hyatt. For these reasons, Mutual is not entitled to receive credit for any sums paid by Mr. Perron. *Taylor v. U.S. Fidelity & Guar. Ins. Co.*, 630 So.2d 237 (La.1993). The trial court erred in granting Mutual's motion for remittitur.

## AMOUNT OF ATTORNEY FEES

Mutual complains that the trial court erred in casting it with 100% of the attorney fees. Mutual argues that the award failed to leave out unrelated amounts apportionable to work performed by Mr. Hyatt's attorney in pursuing a claim against Larry Perron.

Louisiana Code of Civil Procedure Article 1920 provides for the assessment of court costs and "[t]he default rule is that the party cast in judgment is liable for all costs." *Davis v. State ex rel. DOTD*, 11-1386, p. 2 (La.App. 3 Cir. 4/11/12), 87 So.3d 396, 398. Pursuant to La.Civ.Code art. 1920, a court may render judgment for all or any part of the costs against any party it considers equitable. "Article 1920 vests the trial court with vast, but not unbounded, discretion in assessing costs." *Davis*, 87 So.3d at 398.

In *Davis* (a case involving a single-car accident), this court determined that the trial court did not abuse its discretion in assessing 100% of the court costs to the DOTD, as the lone, minimally-liable defendant, even though it was only 25%

18

at fault. The other 75% of fault was assessed to the driver of vehicle who was killed in the accident.

As discussed previously in this opinion, Mutual is responsible to Mr. Hyatt for the full amount of disability benefits under policy because of ambiguity in its own policy. This was not Mr. Perron's fault. We find no abuse of discretion in assessing all attorney fees against Mutual.

Mr. Hyatt also answered the appeal asking for additional attorney fees for work performed on appeal. An award for additional attorney fees is proper for work necessitated by the appeal when an award for attorney fees is granted at the trial level. *Oracle 1031 Exchange, LLC v. Bourque*, 11-1133 (La.App. 3 Cir. 2/8/12), 85 So.3d 736, *writ denied*, 12-546 (La. 4/20/12), 85 So.3d 1272.

Mr. Hyatt was awarded attorney fees in the trial court. In addition to successfully defending the appeal by Mutual, Mr. Hyatt was also successful in getting Mutual's motion for remittitur reversed. We find an additional award of $5,000.00 is appropriate for work performed on appeal.

For the reasons expressed in this opinion, the judgment of the trial court granting Mutual of Omaha Insurance Company's motion for remittitur in the amount of $25,000.00 is reversed. We also amend the judgment to include an additional award of $5,000.00 in attorney fees. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Mutual of Omaha Insurance Company.

**REVERSED IN PART; AFFIRMED AS AMENDED.**